**Dennis W. SMITH, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

No. 97–329.

United States Court of Veterans Appeals.

Jan. 30, 1998.

Dennis W. Smith, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Patricia Trujillo, Washington, DC, were on the brief for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

IVERS, Judge:

The veteran appeals a November 26, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which determined that the veteran had not submitted well-grounded claims for service connection for hypertension, an acquired psychiatric disorder, esophageal dysfunction, skin disability (claimed as dermatologic pruritus), or premature loss of teeth, either directly or as secondary to radiation exposure. The Secretary filed a brief. The veteran has limited his appeal to the issues of service connection for hypertension, an acquired psychiatric disorder, and esophageal dysfunction. The Court deems the veteran to have abandoned his appeal with respect to the issues of service connection for a skin disability, claimed as dermatologic pruritus, and premature loss of teeth. *Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the reasons stated below, the Court will affirm in part, vacate in part, and reverse in part the decision of the BVA and remand two matters.

## I.  FACTS

The veteran served on active duty in the U.S. Navy from August 1960 to July 1964. Record (R.) at 36. His enlistment examina-tion was devoid of any relevant complaints or problems. R. at 13–18. His blood pressure was 120/80. R. at 14. His separation examination recorded his blood pressure as, sitting, 140/88; recumbent, 152/88; and standing, 154/94. It was recommended that the veteran undergo a cardiology consultation; however, this was "[w]aived by patient." He was qualified for release from active duty. R. at 33.

In April 1993 the veteran submitted an application for compensation or pension. R. at 59–62. He also submitted a statement in which he set forth his role in the nuclear test known as Operation Dominic. R. at 51. He also explained that after being released from the Navy, he was called back to the dispensary because he had "traces of radiation" in his blood. The next day he was told his blood test results had been "misread." R. at 51–52. He stated that he had experienced many health problems since service which were "directly caused by the [ ] tests." Additionally, he revealed that he had suffered from high blood pressure since service, that he began to receive treatment for esophageal dysfunction in 1980, and that, because of these problems, he experienced mental anguish. R. at 52. The veteran also submitted a list of treating physicians, dates of treatment, and their addresses. R. at 55–56. Information was received from the Defense Nuclear Agency (DNA) pertaining to the location of the *U.S.S. Henry County,* the ship on which the veteran served during Operation Dominic. R. at 64–82.

Treatment records were requested by VA from Elmer Motte, M.D. (R. at 85), Norbert Wegmann, M.D. (R. at 87), G.F. Jones, M.D. (R. at 89–90), W.E. Doggett, Jr., M.D. (R. at 94–95), P. Delvecchio, M.D. (R. at 98), Robert Carson, M.D. (R. at 112–13), the Baptist Medical Center West (Baptist) (R. at 116–19), and Frank J. Doganiero, M.D. (R. at 134).

In response, records were received from Joe L. Gerald, M.D., showing treatment for the veteran's thumb. R. at 91. Dr. Doggett responded, "We cannot locate any records on this patient." R. at 94.

Duplicate records were received from Dr. Delvecchio and Baptist which showed treat-

ment for acute and chronic anxiety, sinusitis, chest pain, labile hypertension, and esophageal dysfunction. R. at 99–109, 120–27. Specifically, a November 1981 record from Dr. Delvecchio showed diagnoses of hypertension and esophageal dysfunction. R. at 106. The veteran indicated that he had suffered discomfort in his throat for 10 to 12 years and that he was told that he had hypertension 10 years before, with a blood pressure reading of 180/90. R. at 108. Dr. Delvecchio found that, from the veteran's history, it appeared that his symptoms were primarily functional and stress related. R. at 109. Although the veteran indicated that he was treated for high blood pressure within a year of service, he was unable to obtain those records. R. at 282–83.

In January 1993 the veteran sought treatment from Dr. Doganiero. Records from Dr. Doganiero showed treatment for hypertension and esophageal dysfunction. R. at 136–49. Treatment records contain, under the title "S[ubjective]" the notation that the veteran "has [a] history of being exposed to undetermined amount of radiation due to nuclear bomb testing while he was in the service. Since that time he has developed a number of neurological and psychiatric problems. He has also experience[d] a number of [esophageal] motility problems." R. at 147. Treatment records from April 1993 revealed that the veteran "comes into today discuss [sic] problems which he has from his radiation exposure (see past record)." R. at 148. Dr. Doganiero's objective findings were:

It is difficult to access [sic] whether [esophageal] symptoms are directly due to radiation exposure there is no questions [sic] that his condition is greatly influenced from the anxiety of that experience. He states that he was exposed to 7 bomb drops during his time of service and was exposed to radiation during this time.

*Id.*

In June 1993 VA was contacted by Mrs. Graven, the secretary for Drs. Motte and Doganiero. She noted that she had sent the veteran's records to VA and indicated that the handwritten notes on those records were from Dr. Motte while the typed notes were those of Dr. Doganiero. Additionally, she attached more records of treatment for the veteran which included a June 1980 medical entry noting that the veteran had taken Valium for 10 years for questionable blood pressure. The veteran was also treated for nervousness and esophageal spasms. R. at 152–59; *see specifically* R. at 154.

In September 1993 the veteran was notified that exposure to radiation was not a disease or disability and that he needed to specify the nature of the disease or the disability being claimed as a result of exposure. R. at 162. In October 1993 the veteran responded by providing a list of problems he felt were due to radiation exposure and those he felt were simply related to service. R. at 164.

In a February 2, 1994, rating decision, service connection was denied for esophageal dysfunction, dermatologic pruritus, premature loss of teeth, high blood pressure, and anxiety and depression. R. at 167–71. The veteran submitted a Notice of Disagreement. R. at 175. A Statement of the Case (SOC) was issued. R. at 180–87. The veteran submitted a Substantive Appeal. R. at 189–207. In November 1994 he submitted a statement in which he noted, "I wish to amend my five claims to read as possibly related to radiation exposure." R. at 212.

On November 7, 1994, the veteran testified that he began to suffer esophageal dysfunction in 1979 and that he was currently receiving treatment for this problem. R. at 215. He stated that he was never told that he had high blood pressure until his discharge from service. R. at 218–19. He indicated his belief that his depression and anxiety were secondary to the other conditions and not to radiation exposure. R. at 219–20, 224–25. He explained how he had been part of Operation Dominic and that there had been several blasts. He revealed that it was his job to go on deck after the detonations and take radiation readings. R. at 221–23. At the hearing, a June 1994 treatment record from St. Vincents Occupational Health Clinic was submitted that indicated that the veteran's blood pressure was 154/124. The record also specifically found no history of, nor did it give a diagnosis of, a psychiatric disorder or other nervous disorder. R. at 210.

In December 1994 the hearing officer determined that service connection had not been established for esophageal dysfunction, hypertension, or anxiety and depression. R. at 232–35. A Supplemental SOC was issued. R. at 237–42.

On March 8, 1996, the veteran testified before a member of the BVA and reiterated his previous contentions. R. at 255–80. He stated his belief that his hypertension should be service connected and that his anxiety was due to his experience in 1962 during Operation Dominic. R. at 257. He indicated that he had been denied jobs because of his hypertension. R. at 260–62. He reported treatment from a Dr. Rudser or Rudner in 1964, but stated that he was unable to obtain those records. R. at 262. He also stated that he had been told by a nurse at the store where he worked, in 1965, that his blood pressure was borderline. R. at 265. He reported that he had received treatment from a doctor whom he could not remember as well as from Dr. Sanguinetti in 1965 or 1967, but that Dr. Sanguinetti was deceased. R. at 265–66. He indicated that Dr. Wegmann had treated him from 1967 to 1970 and that Dr. Motte had treated him from 1979 to 1986. R. at 266–67. The BVA member and the veteran spent the rest of the hearing discussing the medical evidence of record and also whether the veteran would be able to obtain further medical evidence. R. at 267–80.

Thereafter, the veteran submitted a letter and stated that he could not obtain records from Dr. Rudser because he was unlisted or from Dr. Carter and Dr. Sanguinetti because they were both deceased. He also indicated that he had talked to Dr. Wegmann's nurse several times and that she indicated that Dr. Wegmann remembered the veteran, "but [that] they could only find a few records in a storage room and of course, none were mine." R. at 282.

On November 26, 1996, the BVA rendered the decision currently on appeal. The BVA determined that the veteran had not submitted well-grounded claims for service connection for hypertension, an acquired psychiatric disorder, esophageal dysfunction, a skin disability claimed as dermatologic pruritus, and premature loss of teeth, either directly or as secondary to radiation exposure. R. at 4.

## II. ANALYSIS

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *Anderson v. Brown*, 9 Vet.App. 542, 545 (1996). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). In *Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992), the Court held that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." For a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Anderson, supra; Caluza v. Brown*, 7 Vet. App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir.1996) (table). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *Anderson, supra; Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993).

### 1. Hypertension

There is no competent medical evidence of record providing a nexus between the veteran's hypertension and his military service. There are only the blood pressure readings taken during his separation examination. It was the suggestion of the examiner, at that time, that the veteran undergo a cardiology examination, which the veteran "waived." R. at 33. The earliest documentation that the veteran was suffering from high blood pressure was in 1980, sixteen years after service. Although, at that time, it was

noted that the veteran had been taking Valium for 10 years, that would still place the veteran's initial diagnosis in 1970, six years after service. R. at 154. The veteran contends that he was told that he had high blood pressure earlier than 1970, but he has been unsuccessful in his attempts to obtain records to that effect. *See* R. at 282–83. The veteran is the only person to have linked his current hypertension to his service. However, as a lay person, he is not medically qualified to render a decision as to medical causation or etiology. *See Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). Therefore, the veteran's claim for service connection for hypertension was not well grounded. *See Anderson, Caluza,* and *Grottveit,* all *supra.*

### 2. Acquired Psychiatric Disorder

■ In construing the unrepresented appellant's brief in the manner most beneficial to the veteran, the Court finds that he has continued to pursue a claim of service connection for his psychiatric disorder based upon his experiences during Operation Dominic. Specifically, the veteran contended in his brief that "my problems are secondary to the events by which I mean the nuclear tests in and of themselves." Appellant's Brief at 5. The veteran's service medical records (SMRs) do not list any psychiatric problems or complaints. The earliest that the veteran complained of nervousness was 1980. R. at 154. The record is unclear as to Dr. Doganiero's medical specialty; however, the record reflects that Dr. Doganiero saw the veteran for his esophageal symptoms. The Court notes that in April 1993 Dr. Doganiero stated that the veteran's esophageal symptoms were "greatly influenced from the anxiety" related to his radiation exposure in service. R. at 148. Taking the veteran's claim for service connection for an acquired psychiatric disorder based upon his presence during Operation Dominic and not upon exposure to ionizing radiation, in combination with Dr. Doganiero's statement, the Court holds that he has submitted a well-grounded claim as to the acquired psychiatric disorder and that the decision must be reversed, as to its determination that this claim was not well grounded, and remanded for further adjudication.

### 3. Esophageal Disorder

The veteran's SMRs do not indicate any problem related to esophageal dysfunction. It was not until 1980 that the veteran was diagnosed by Dr. Motte with esophageal spasms. R. at 154. The documents of record related the veteran's esophageal dysfunction to stress. Dr. Doganiero did not provide an etiological link between the veteran's esophageal dysfunction and radiation exposure. He merely explained that a link would be "difficult to assess." R. at 148. The only person to provide such a link is the veteran and, as a lay person, he is not qualified to do so. *See Espiritu, supra.* However, if it is determined on remand that the acquired psychiatric disorder is service connected, then Dr. Doganiero's opinion would also make the esophageal disorder claim well grounded. Therefore, the Court will remand the esophageal disorder claim as well. *See Bagwell v. Brown,* 9 Vet.App. 337, 339–40 (1996); *Harris v. Derwinski,* 1 Vet.App. 180, 183 (1991); *cf. Zang v. Brown,* 8 Vet.App. 246, 254 (1995).

### III. CONCLUSION

The November 26, 1996, decision of the BVA is AFFIRMED in part regarding the claim for hypertension and VACATED regarding the claim for an esophageal disorder and the matter remanded and REVERSED and remanded as to the matter of an acquired psychiatric disorder.