# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-1888

JACOB WANNER, APPELLANT,

AND

No. 01-1012

KING L. WRIGHT, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 27, 2002                    Decided   February 12, 2003 )

*Ronald L. Smith*, with whom *J. Marc Burgess* was on the briefs, both of Washington, D.C., for the appellants.

*Mark M. McNabb*, with whom *Tim S. McClain*, General Counsel; *Joan E. Moriarty*, Acting Assistant General Counsel; and *Mary Ann Flynn*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief in case 01-1012, for the appellee.  *Tim S. McClain*, General Counsel; *R. Randy Campbell*, Acting Assistant General Counsel; *Darryl A. Joe*, Acting Deputy Assistant General Counsel; and *Erica M. Dornburg*, all of Washington, D.C., were on the brief in No. 00-1888 for the appellee.

Before IVERS, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*:   Appellant King L. Wright appeals a February 20, 2001, Board of Veterans' Appeals (BVA or Board) decision that denied, inter alia, separate 10% ratings (effective June 10, 1999) for each ear for his Department of Veterans Affairs (VA) service-connected tinnitus. *Wright* Record [hereinafter *Wri.* R.] at 2, 5.   (Tinnitus is "a noise in the ears, such as ringing, buzzing, roaring or clicking".  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1714

(28th ed. 1994)). Appellant Jacob Wanner appeals a June 7, 2000, BVA decision that denied a compensable rating effective earlier than June 10, 1999, for his VA service-connected tinnitus and denied a rating greater than 10% (effective June 10, 1999) for that condition. *Wanner* Record [hereinafter *Wan.* R.] at 2.

## I. Relevant Background

### A. Wright

Appellant Wright served on active duty in the U.S. Army from December 1942 until December 1945, including service in World War II. *Wri.* R. at 12. In March 1947, a VA regional office (RO) awarded service connection and assigned a noncompensable rating for "impairment of auditory acuity", effective from December 21, 1945, the day following his date of discharge. *Wri.* R. at 15. At the time of the 1947 VARO decision, the examining audiologist reported that the veteran claimed that he was "subjected to noises such as machine guns, explosion rifles, mortar shells[,] and aircraft engines" during World War II; the audiologist concluded that the veteran's "tinnitus [was] consistent with the history of noise exposure". *Wri.* R. at 16. In a July 1985 decision, the RO noted that, upon examination at the veteran's separation from service, he had 15/15 hearing bilaterally, with 12/15 in his right ear and 15/15 in his left ear. *Wri.* R. at 18. The RO also recorded that "[t]he veteran gave a history of exposure to loud noises in service and now complained of a squeaky ringing in his ears". *Wri.* R. at 18. The RO granted service connection for tinnitus and continued the prior noncompensable rating, but referred to his condition as "defective hearing, bilateral with tinnitus". *Wri.* R. at 19.

In a July 1986 VA tinnitus-examination report, an audiologist recorded that the veteran was suffering from "a mild to moderate sensorineural hearing loss bilaterally" and that "the patient's tinnitus is a moderate annoyance, and does present a disturbance to the veteran's sleep and interpersonal communication". *Wri.* R. at 77. Based on a finding that the veteran's hearing had worsened since his separation from service, in July 1988 the RO assigned a 20% rating for his service-connected bilateral hearing loss with tinnitus, effective June 29, 1987, the date that a VA medical examination confirmed the veteran had an increased hearing loss. *Wri.* R. at 23. The RO

2

also commented: "Claimed tinnitus does not warrant separate compensable evaluation as it is not shown in service or as the result of definite acoustic trauma." *Ibid.*

In response to the veteran's April 1999 claim for an increased rating for his bilateral hearing loss with tinnitus (*Wri.* R. at 38), the RO continued the 20% rating in October 1999. *Wri.* R at 44. The RO commented: "Although the veteran's hearing loss does not meet the current criteria to support the 20[%] evaluation, this evaluation is continued as it was assigned under old rating criteria previously in effect for evaluating hearing loss. Higher evaluations are assigned for greater loss of hearing." *Wri.* R. at 45. On appeal to the Board (*Wri.* R. at 63), the veteran argued, inter alia, that he should receive a separate 10% tinnitus rating for each ear. *Wri.* R. at 73. Specifically, he argued that Diagnostic Code (DC) 6260 (in 38 C.F.R. § 4.87a) is ambiguous because it does not specify "whether recurrent tinnitus must be present in both ears in order to warrant the [10%] rating, whether recurrent tinnitus in either ear alone will warrant the [10%] rating, or whether such bilateral tinnitus warrants separate [10%] ratings". *Wri.* R. at 75. On a November 1991 statement-in-support-of-claim form, the veteran stated that he is "partly deaf", his "ears ring all the time", and his condition keeps him awake "most of the night". *Wri.* R. at 92-93.

In the February 2000 BVA decision here on appeal, the Board denied a rating greater than 20% for the appellant's bilateral hearing loss with tinnitus and assigned a separate 10% rating for tinnitus effective as of June 10, 1999. *Wri.* R. at 2. In determining the proper rating and effective date for the tinnitus claim, the Board stated:

> At the time the veteran was granted service connection for tinnitus and prior to June 10, 1999, the only [DC] to address tinnitus was [DC] 6250 [sic], which allowed a compensable (10%) rating for tinnitus only if it was persistent and resulted from a head injury, concussion, or acoustic trauma. *See* 38 C.F.R. § 4.87a, [DC] 6260, effective prior to June 10, 1999. On June 10, 1999, [DC] 6260 was amended to provide that service-connected tinnitus would be rated as 10% disabling if recurrent. *See* 38 C.F.R. § 4.87, [DC] 6260, effective on and after June 10, 1999. The current [DC] 6260 also noted that a separate evaluation for tinnitus may be combined with an evaluation under [DCs] 6100, 6200, 6204 or other [DCs], except where tinnitus supports an evaluation under one of those [DCs]. *See* 38 C.F.R. § 4.87 [DC] 6260, effective as of June 10, 1999.

*Wri.* R. at 4. The Board then reasoned that, although *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), required that the Board apply the more favorable law, under 38 U.S.C. § 5110(g) the Board may apply the amended regulation only "to rate the veteran's disability for periods from and after the effective date of the amendment"; the Board concluded, therefore, that it could award a 10% rating for tinnitus only effective as of June 10, 1999. *Wri.* R. at 5 (citing VA Gen. Coun. Prec. (G.C. Prec.) 03-00 (Apr. 10, 2000)).

In response to the appellant's argument that he should receive, under DC 6260, two 10% ratings for tinnitus, one for each ear, the Board reasoned:

> While the rating schedule does provide[] for rating each ear for otitis media, otitis externa, and ear neoplasms, it specifically does not address the "bilateral" condition in [DC] 6260 for tinnitus. [Those three conditions] are all conditions that may affect only one or both ears and may have separate complications when bilateral. Tinnitus, on the other hand, is a condition that is defined as "a ringing, buzzing noise in the ears.["] [DORLAND'S] 1725 (27th ed. 1988)[]. In other words, it is a diffuse perception of sound, rather than an actual physical condition. Thus, the Board finds that either tinnitus is present or it isn't, it is an all-or-none phenomenon, and a single evaluation is appropriate whether it is perceived as being bilateral, unilateral, or somewhere in between. Thus, the Board concludes that [DC] 6260 provides for a maximum 10[%] rating for recurrent tinnitus, whether perceived as unilateral or bilateral.

*Wri.* R. at 5.

### B. Wanner

Appellant Wanner served honorably, including wartime service, in the U.S. Marine Corps from February 1946 to June 1948. *Wan.* R. at 33, 40. While in service, the veteran developed tuberculosis (*Wan.* R. at 28-29), for which he was treated with an ototoxic medication, streptomycin, (*Wan.* R. at 3). Following his July 1948 application for benefits (*Wan.* R. at 36), an RO granted service connection for his tuberculosis in November 1949 (*Wan.* R. at 39). In April 1982, he filed, inter alia, a claim for service connection for his bilateral hearing loss, which he stated was "due to medication". *Wan.* R. at 42. In May 1982, a private audiologist examined him and concluded that he had "a mild high[-]frequency hearing loss consistent with his history of ototoxic medication" (*Wan.* R. at 46), and in September 1982 he was diagnosed with "tinnitus aurium, recurrent" (*Wan.*

4

R. at 50). The RO denied his claim for service connection in November 1982 and issued a Statement of the Case (SOC) in April 1983 and a Supplemental SOC in September 1983 reiterating that denial. *Wan.* R. at 52-54, 66, 81-82. In a September 1984 hearing at the RO, the veteran testified under oath that he had not experienced any ringing in his ears before he began taking tuberculosis medication. *Wan.* R. at 90. He further testified that he had served with an artillery unit and "did a lot of firing", which also caused his ears to ring. *Wan.* R. at 90.

In August 1985, based on several medical opinions that the veteran's tinnitus resulted from the streptomycin medication, the Board awarded service connection for tinnitus as "the result of treatment for a service-connected disability". *Wan.* R. at 115-17. The RO assigned a noncompensable rating for the condition, effective from April 15, 1982, the date on which the veteran had filed his claim. *Wan.* R. at 122. On September 23, 1998, he filed a claim for an increased rating, based on the assertion that his bilateral hearing loss had increased in severity (*Wan.* R. at 125), and he underwent a VA audiological examination in November 1998 (*Wan.* R. at 136-39). The examining physician concluded that the veteran "does indeed have a significant bilateral sensorineural hearing loss" and stated:

> [T]he tinnitus was not present early on when he suffered any damage due to the streptomycin. It would be hard to argue that the streptomycin he took for his tuberculosis probably caused some of his hearing loss [sic]. The exact percentage of that [loss] cannot be determined, but it is probably a factor. The tinnitus is probably more related to aging, and the tinnitus does not seem to be that bothersome to him and does not interfere with his functioning.

*Wan.* R. at 138. In January 1999, the RO increased the veteran's rating for high-frequency hearing loss, bilateral, to 20%, but denied a compensable rating for tinnitus because the record did not show "persistent tinnitus as a symptom of head injury, concussion, or acoustic trauma". *Wan.* R. at 143. On appeal to the Board, the veteran challenged only the noncompensable rating for his service-connected tinnitus. *Wan.* R. at 161, 167.

In the BVA decision here on appeal, the Board denied a compensable rating effective earlier than June 10, 1999, for the veteran's service-connected tinnitus but awarded a 10% rating as of that date. *Wan.* R. at 2. As in the Board's *Wright* decision, the Board here found that, although under *Karnas*, *supra*, the more favorable law must apply, DC 6260 (1999) is effective as of June 10, 1999,

and the regulation does not permit retroactive application. *Wan.* R. at 5-6. In applying the pre-June 10, 1999, DC 6260 [hereinafter "pre-1999 DC 6260"], the Board concluded that even if it were to determine that the veteran's tinnitus was persistent, "there is no indication of record (nor does the veteran contend) that it was a symptom of head injury, concussion, or acoustic trauma". *Wan.* R. at 6. In examining DC 6260 as effective on June 10, 1999 [hereinafter DC 6260 (1999) or DC 6260 (2002)], the Board concluded that a 10% evaluation was warranted for the veteran's tinnitus because it was "recurrent", occurring four to five times daily, and that that rating "remains the maximum disability rating available under this [DC]". *Wan.* R. at 6.

## II. Contentions on Appeal

Each appellant seeks reversal of his respective Board decision and the assignment of two separate 10% tinnitus ratings, one for each ear; appellant Wright seeks an effective date of April 8, 1999 (the date of his claim for an increased rating (*Wri.* R. at 38)); appellant Wanner seeks an effective date of September 23, 1988 (the date of his claim for an increased rating (*Wan.* R. at 125)). *Wri.* Brief (Br.) at 13; *Wan.* Br. at 25. In their principal and reply briefs, the appellants make many of the same arguments in support of their general arguments that the Board erred by failing to award (1) two separate 10% ratings for the each appellant's tinnitus, one for each ear, and (2) an effective date prior to June 10, 1999, for the appellants' 10% tinnitus ratings.

### A. Separate Tinnitus Ratings

First, both appellants argue that the Board misinterpreted DC 6260 when it failed to award two separate 10% tinnitus ratings, one for each ear. *Wri.* Br. at 9; *Wan.* Br. at 12. Specifically, the appellants argue that 38 C.F.R. § 4.25 requires that the appellants' tinnitus disabilities be rated separately because "each service-connected disability shall be separately rated and the ratings [shall be] combined". *Wri.* Br. at 9 (citing 38 C.F.R. § 4.25, *Colayong v. West*, 12 Vet.App. 524, 531 (1999), and *Esteban v. Brown*, 6 Vet.App. 259, 262 (1994)); *Wri.* Reply at 1-2; *Wan.* Reply at 8-9. The appellants also argue that because that DC does not specify whether the 10% rating available for tinnitus may be awarded for each ear or whether 10% is the maximum rating for both unilateral and bilateral tinnitus, that ambiguity must be resolved in favor of the veteran, particularly in light of the fact that in other DCs the Secretary has explicitly specified that other disabilities that may be

6

experienced bilaterally may receive only one rating whether the condition involved is unilateral or bilateral. *Wri.* Br. at 10-11 (citing 38 C.F.R. §§ 4.87a, DC 6207 (providing separate rating for "loss of both" and for "loss of one" auricle); 4.84a, DC 6011 (providing one rating for scars of the retina, whether "unilateral or bilateral), DC 6019 (providing one rating for "[p]tosis, unilateral or bilateral", DC 6023 (providing one rating for loss of eyebrows, whether "unilateral or bilateral"), DC 6024 (providing one rating for loss of eyelashes, whether "unilateral or bilateral", and DC 6029 (providing one rating for aphakia, whether "[b]ilateral or unilateral"); and 4.97, DC 6520 (providing one rating for stenosis of larynx, whether "unilateral or bilateral")); *Wan.* Br. at 12-14 (citing DC 6207 for proposition that where single rating is intended, Secretary has specifically so provided).

The Secretary argued initially in *Wright* that the appellant's increased-rating claim for his service-connected hearing loss has been abandoned on appeal. Secretary's Br. in response to *Wri.* Br. [hereinafter Br. #2] at 6-7 (citing *Smith (Dennis) v. West*, 11 Vet.App. 56, 57 (1998), *Mykles v. Brown*, 7 Vet.App. 372, 373 (1995), and *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993)). The Court agrees. *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997). In *Wanner*, initially the Secretary argued at length that the appellant has failed to exhaust his administrative remedies because he did not raise the separate-tinnitus-ratings issue before VA or the Board (Secretary's Br. in response to *Wan.* Br. [hereinafter Br. #1] at 5-9); the appellant objected to that argument in his reply brief (*Wan.* Reply at 1-9), and the Secretary later moved, in light of the Court's consolidation order, to withdraw that portion of the brief (Motion at 1-2). The Court will grant that motion.

As to the merits of the appellants' separate-tinnitus-ratings arguments, the Secretary counters that the rating schedule is not ambiguous and that it "explicitly prohibits pyramiding of disability evaluations" under 38 C.F.R. § 4.14 (2000). Br. #1 at 9; Br. #2 at 7. The Secretary argues that he has provided for separate ratings for "like organs" when he intended to and that, had he intended separate ratings in the case of bilateral tinnitus, he would have provided for it. Br. #1 at 9; Br. #2 at 7 (both citing DC 6207; 38 C.F.R. § 4.115b, DC 7523 (providing separate ratings for atrophy of "[o]ne" testis and "[b]oth" testes) and DC 7524 (providing separate ratings for removal of "[o]ne" testis and "[b]oth" testes); and 38 C.F.R. § 4.116, DC 7626 (providing separate ratings for surgery on "[o]ne" breast and on "[b]oth" breasts)). The Secretary further asserts that (1) "VA considers

tinnitus a single disability, whether heard in one ear, both ears, or somewhere undefined in the head";
(2) no matter where the condition is manifested, "the average impairment on earning capacity is the
same"; and (3) therefore, under 38 U.S.C. § 1115 and 38 C.F.R. § 4.1 (2000), the rating schedule
assigns a single rating for tinnitus because ratings are based in large part on impairment of earning
capacity.  Br. #1 at 9-10; Br. #2 at 7-8.

In reply to the Secretary's briefs, both appellants argue that the Court should reject the
Secretary's "post[]hoc rationalization[]" that "VA considers tinnitus a single disability" because VA
never adopted this position before the Secretary filed the brief and that the Court should thus give
no deference to this position because it was "'fashioned for the purposes of litigation'". *Wri.* Reply at
2-3; *Wan.* Reply at 9-11 (quoting *Alaniz v. OPM*, 728 F.2d 1460, 1465 (Fed. Cir. 1984)).

### B.  Earlier Effective Date (EED)

Appellant Wright asserts that the Board misinterpreted pre-1999 DC 6260 when it held, "de[]
facto", that the frequency of his tinnitus was not "persistent" within the meaning of the pre-1999 DC,
despite the fact that "the tinnitus is constant in nature" (*Wright* Br. at 6, 12-13 (citing 38 C.F.R.
§ 4.87a, DC 6260 (1998) and *Wri.* R. at 32-33, 77, 79, 87, 90, 95)) and, therefore, it is "persistent"
under the plain meaning of the pre-1999 regulation.  *Wri.* Br. at 12-13.  Furthermore, the appellant
asserts that the "Board's unexplained *ipse dixit* that the veteran's tinnitus is [only] 'recurrent[]' . . .
should be reversed by the Court."  *Wright* Br. at 13 (citing *Wri.* R. at 2, 5).  The Secretary counters
that the determination of a proper effective date is a question of fact and is therefore reviewable only
under the "clearly erroneous" standard under 38 U.S.C. § 7261(a)(4).  Br. #2 at 9 (citing *Hanson v.
Brown*, 9 Vet.App 29, 32 (1996), and *Scott v. Brown*, 7 Vet.App. 184, 188 (1994)).  The Secretary
argues that the Court should affirm the Board decision because there is "a 'plausible basis' in the
record" for the Board's determination that the appellant is not entitled to a separate rating for tinnitus
prior to June 10, 1999.  Br. #2 at 9 (quoting *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990)).  In
response to appellant Wright's assertion that "'tinnitus described as constant is persistent within the
meaning of the [pre-1999] regulation'", the Secretary states that he "does not dispute that statement";
instead, he argues that, as the Board determined, the condition did not "result[] from a head injury,
concussion[,] or acoustic trauma".  Br. #2 at 9-10 (quoting *Wri.* Br. at 12-13); *see Wri*. Reply at 6.

Both appellants also argue that they are entitled to an effective date earlier than June 10, 1999, because the requirement contained in the pre-1999 DC 6260 that the disability be a symptom of "head injury, concussion[,] or acoustic trauma" [hereinafter "the trauma requirement"] is unlawful; the appellants contend that the DC conflicts with 38 U.S.C. § 1110 by denying compensation for tinnitus that was not acquired from trauma. *Wan*. Br. at 15-19 (citing *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994), and *Allen v. Brown*, 7 Vet.App. 439, 446 (1995) (en banc), for proposition that it is "contrary to law" for VA to limit statute "thereby narrowing [its] scope . . . and construing it against veterans"); *Wri*. Reply at 4-8 (same). Both appellants assert that the Court has jurisdiction to hold that pre-1999 DC 6260 conflicts with section 1110, because such a holding is not the review of the rating schedule that is prohibited by 38 U.S.C. § 7252(b). *Wan*. Br. at 15 (citing *Villano v. Brown*, 10 Vet.App. 248, 249-50 (1997)); *Wri*. Reply at 5 (same).

Appellant Wanner asserts that the scope of the Court's review includes the review of regulations that the Court finds to be "contrary to constitutional right, power, privilege, or immunity" under section 7261(a)(3)(B). *Wan*. Br. at 19-22 (citing 38 U.S.C. § 7252(a), H.R. REP. NO. 100-963, at 30 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5812); *see* 38 U.S.C. § 7261(a)(3)(B). He argues that the Secretary has created "unconstitutional classifications", having no rational basis for the distinction, by providing for tinnitus benefits under pre-1999 DC 6260 only for those veterans who meet the trauma requirement; appellant Wanner asserts that those veterans not meeting the necessary qualifications are therefore denied equal protection of the law under the Fifth Amendment of the U.S. Constitution (as it includes, at least in part, protections under the Fourteenth Amendment against federal government action, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). *Wanner* Br. at 22-23. Furthermore, appellant Wanner agrees with the Secretary that the "degree of impairment" in earning capacity under section 38 U.S.C. § 1155 determines the amount of a compensation award, but he contends that pre-1999 DC 6260 intimates "no relationship between the manner in which tinnitus was acquired and its effect on earning capacity". *Wan*. Br. at 24-25. Appellant Wright also sets forth, less extensively, an equal-protection-violation argument. *Wri*. Reply at 4.

The Secretary first counters appellant Wanner's equal-protection arguments by challenging the Court's jurisdiction to entertain such arguments. The Secretary argues that section 7252(b) prohibits Court review of the rating schedule and requires no interpretation or, therefore, recourse

to legislative history to divine congressional intent. Br. #1 at 13 (citing *Hood v. Brown*, 4 Vet.App. 301, 304 (1993), for the proposition that "Court [is] precluded from reviewing the [rating] schedule"). The Secretary also argues that the appellant "raises his constitutional argument as a means of bypassing the statutory provisions governing the assignment of an effective date for payment of compensation based on a liberalizing change of law". Br. #1 at 14 (citing *Bucklinger*, 5 Vet.App. at 441; *Dorward v. West*, 13 Vet.App. 295 (2000) (per curiam order)). Although the Secretary makes no direct argument for any rational basis for this classification based on trauma, he does state that "the Secretary's rating covered the ***common*** forms of tinnitus from injury or disease". *Wan.* Br. at 17 (emphasis added).

### III. Analysis

The Court will address in turn the following issues: (1) Whether DC 6260 provides for two separate ratings for bilateral tinnitus, i.e., one rating for each ear, and (2) whether the appellants are eligible for an EED, to include the jurisdiction and merits issues involved in determining the validity of the trauma requirement.

#### A. DC 6260: Unilateral or Bilateral?

In 1998 and until June 10, 1999, DC 6260 provided a 10% rating for tinnitus where the condition was "[p]ersistent as a symptom of head injury, concussion, or acoustic trauma". DC 6260 (1998). On June 10, 1999, an amendment to DC 6260 went into effect; that amendment contains the same text as the current regulation and provides for a 10% rating for "[t]innitus, recurrent", with the following note: "Note: A separate evaluation for tinnitus may be combined with an evaluation under [DCs] 6100, 6200, 6204, or other DC, except when tinnitus supports an evaluation under one of those DCs." 38 C.F.R. § 4.87, DC 6260 (2002); 64 Fed. Reg. 25200, 25202, 25206 (May 11, 1999).

The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Charles v. Principi*, 16 Vet.App. 370, 373 (2002); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement

of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

The appellants argue that 38 C.F.R. § 4.25(b) requires the assignment of two separate tinnitus ratings, one for each ear. The Board decision, however, failed to address § 4.25(b), which states in pertinent part: "Except as otherwise provided in this schedule, the disabilities arising from a single disease entity, e.g., arthritis, multiple sclerosis, cerebrovascular accidence, etc., are to be rated separately[,] as are all other disabling conditions, if any." 38 C.F.R. § 4.25(b) (2002). Therefore, the Board's statements of reasons or bases were inadequate because the Board failed to discuss this "potentially applicable" regulation and its impact on the appellants' claims for separate tinnitus ratings for each ear under DC 6260. These claims must thus be remanded for readjudication in light of this regulation under both the pre-1999 (in view of our holding in part II.B.2.c., below) and the current DC.

The Court notes that it is unclear whether the "all other disabling conditions" language in § 4.25(b) refers to "all" such disabling conditions generally or if that phrase is intended to refer to "disabilities arising from a single disease entity". The Board should also consider this matter in readjudicating the appellant's claims. Additionally, the Court notes that the Secretary recently has proposed to add to the rating schedule a Note, which would provide: "Note (2): Assign only a single evaluation for recurrent tinnitus, whether the sound is perceived in one ear, both ears, or in the head." 67 Fed. Reg. 59033, 59034 (Sept. 19, 2002). In the accompanying Supplementary Information, the Secretary explained that the regulation is proposed "[t]o avoid any possible misunderstanding", "[t]o assure that tinnitus is consistently and correctly evaluated", and "to definitively state that recurrent tinnitus is assigned only one evaluation whether it is perceived in one ear, both ears, or an

11

indeterminate site in the head"; the Secretary stated that the "amendment involves no substantive change and is consistent with current practice". 67 Fed. Reg. at 59033. Neither the proposed regulation nor the Supplementary Information state a proposed effective date or express an intent to give the regulation any retroactive effect.

## B. Effective Date

### 1. Jurisdiction

The appellants challenge on both constitutional and statutory grounds the regulatory trauma requirement contained in DC 6260 (1998) . The Court's jurisdiction is described in 38 U.S.C. § 7252(b):

> Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.

38 U.S.C. § 7252(b); *see also* 38 U.S.C. § 1155 (authorizing Secretary to adopt schedule for rating disabilities). Although the Secretary conceded at oral argument that the constitutional issue falls within the scope of the Court's review, he contests the appellant's assertion that the law also empowers the Court to review the DC for its compliance with the statute.

As to the constitutional argument, it is well settled that the Court possesses jurisdiction to review constitutional arguments generally; section 7261(c)(2) provides that the Court may "hold unlawful and set aside" regulations that are, inter alia "contrary to constitutional right, power, privilege, or immunity". 38 U.S.C. § 7261(c)(2)(B); *Robinson v. Brown*, 9 Vet.App. 398, 399-400 (1996) (reiterating holding that Court is "empowered to make determinations regarding the interpretation and application of regulations and constitutional claims"). It is also well settled that any exclusion of jurisdiction in courts to review constitutional contentions regarding benefits under title 38 of the U.S. Code will be disfavored. *See Johnson v. Robison*, 415 U.S. 361, 366-74 (1974) (holding that 38 U.S.C. § 211(a) (1970) did not bar judicial review of constitutional questions arising under title 38, U.S. Code); *see also Traynor v. Turnage*, 485 U.S. 535, 542-45 (extending *Robison* holding "that the federal courts c[an] entertain constitutional challenges to veterans' benefits

legislation" and concluding that "the question whether a Veterans' Administration regulation violates the Rehabilitation Act is not foreclosed from judicial review by [section] 211(a)"). Recently, the U.S. Court of Appeals for the Federal Circuit concluded that the prohibition in 38 U.S.C. § 502 (substantially similar to the section 7252(b)(2) prohibition) against reviewing a revision to the rating schedule does not preclude that court's review of the constitutionality of such a revision. *Nyeholt v. Principi*, 289 F.3d 1350, 1352-53 (Fed. Cir. 2002). Furthermore, it is also a well-established principle of constitutional litigation that a Court will "'avoid reaching constitutional questions in advance of the necessity of deciding them'", and will first determine whether the case may be decided on statutory grounds. *Bucklinger*, 5 Vet.App. at 441 (quoting *Lyng v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439, 445 (1998)). Therefore, although as in *Bucklinger*, 5 Vet.App. at 440, the instant case raises a serious constitutional issue (especially in light of our ensuing statutory-conflict holding in part III.B.2.c., below, and in light of the fact that the Secretary fails to assert a rational basis for providing benefits to veterans with tinnitus who satisfy the trauma requirement and denying benefits to those with tinnitus who do not), we will not reach that issue because the Court will invalidate that part of the DC at issue, on statutory grounds. *See* part III.2.c., *infra*.

As to the Court's jurisdiction to review the appellants' statutory argument, the issue is whether the Court's examination of DC 6260 (1998) for consistency with section 1110 constitutes the "review [of] the [rating] schedule" that section 7252(b) prohibits or, rather, whether such an issue is within the scope of the Court's review powers. In *Villano*, the Court held that it could "review . . . the schedule of ratings" for the "limited" purpose of determining "whether a particular [DC] is contrary to law". *Villano*, 10 Vet.App. at 250. As in *Hood v. Brown*, here "[t]he Court is not reviewing the schedule or percentage ratings or the percentages prescribed by that schedule". *Hood*, 4 Vet.App. 301, 304 (1993). Although Court review is precluded as to intraschedular conflict, what should be considered a disability, and the appropriate rating for any disability, that sort of review is not now before the Court; hence, we conclude, as in *Villano*, *supra*, that the Court may review whether the regulation complies with the statutory authority under which disability compensation is paid, 38 U.S.C. § 1110.

Moreover, as is referenced in section 7252(b), section 7261 sets forth the scope of the Court's review; section 7261(a)(1) and (3) explicitly allow the review sought by the appellants in the instant

13

case. Section 7261(a)(3) permits the Court to "hold unlawful and set aside" regulations that are, inter alia, "not in accordance with law" or "in excess of statutory . . . authority[] or limitations, or in violation of a statutory right". 38 U.S.C. § 7261(a)(1), (3). The Secretary asserts that the appellant misreads the words of section 7261(a) by failing to recognize its introductory language, which provides that the scope as defined therein is limited "to the extent necessary to its decision and when presented", 38 U.S.C. § 7261(a); the Secretary argues that this language bars the Court from addressing this issue because "review of the rating provisions at issue in this case are neither 'necessary' to the Court's decision nor properly 'presented' for judicial review". Br. #1 at 14. To the extent that the Secretary is arguing that the issue is not properly "'presented'", it appears that he is referring to his argument that the appellant failed to exhaust his administrative remedies (Br. #1 at 5-9); however, the Secretary has moved to withdraw that portion of his brief (Motion at 1-2), *see Maggitt v. West*, 202 F.3d 1370, 1378-79 (Fed. Cir. 2000) (holding that Court "did not lack jurisdiction to consider Maggitt's constitutional and statutory arguments", even though administrative remedies were not exhausted). To the extent that the Secretary is arguing that the issue is not "'necessary' to the Court's decision", the Court rejects that argument as erroneous because the very issue before the Court is whether the appellant is entitled to an EED based on the asserted invalidity of the pre-1999 DC. Moreover, Congress is presumed to legislate with knowledge of caselaw that sets forth principles of statutory construction, *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991), including the "'fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them'", *Bucklinger*, *supra* (quoting *Lyng*, *supra*); hence, to decide that Congress prohibited the Court from deciding a case on statutory grounds and directed instead that a constitutional question be confronted that might otherwise be avoided would be to impute to Congress, when enacting section 7252(b), the abrogation by silence of a fundamental statutory-construction principle.

Therefore, for all the reasons discussed above, we hold that the Court has jurisdiction, pursuant to section 7261(a)(3)(C), to determine whether a DC regulation is "in violation of a statutory right" and, pursuant to section 7261(a)(3)(A), to determine whether a DC regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 38 U.S.C. § 7261(a)(3)(C), (B).

14

## *2. Merits*

As appellant Wanner and the Secretary both contend, the validity of DC 6260 (1998) is an issue of law. *Wan.* Br. at 10, Br. #1 at 1. Hence, we will examine the issue under the de novo standard of review pursuant to section 7261(a)(1) and (3).

*a. Applicable DC: Karnas* instructs: "Where the law or regulation changes after a claim has been filed or reopened but before the administrative . . . process has been concluded, the version mo[re] favorable to the appellant should and we so hold will apply ***unless Congress*** provided otherwise or ***permitted the [Secretary] to do otherwise and the Secretary did so***." *Karnas*, *supra* (emphasis added). As the appellants point out, the Secretary specifically provided that the current regulation, which does not contain the trauma requirement, is not applicable prior to June 10, 1999. 64 Fed. Reg. 25,200, 25,202 (May 11, 1999) (specifying effective date).

In appellant Wright's case, the Board cited *Karnas* and concluded that it was constrained by 38 U.S.C. § 5110(g) not to apply the more favorable regulation in DC 6260 (1999) prior to its June 10, 1999, effective date. *Wri.* R. at 4-5; *see Wan*. R. at 4-5. Section 5110(g) provides:

> Subject to the provisions of section 5101 of this title, where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found ***but shall not be earlier than the effective date of the Act or administrative issue***. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

38 U.S.C. § 5110(g) (emphasis added). The Court held in *DeSousa v. Gober* that section 5110(g) "precludes an effective date earlier than the effective date of the liberalizing . . . regulation", but the Board must, nonetheless, still adjudicate whether a claimant "would receive a more favorable outcome, i.e., something more than a denial of benefits, under the ***prior*** law and regulation". *DeSousa*, 10 Vet.App. 461, 467 (1997). Accordingly, the Board had the duty to adjudicate the appellant's claims under the pre-1999 DC for any period prior to June 10, 1999, as well as under the new DC for the period beginning on June 10, 1999. *See DeSousa* and *Karnas*, both *supra*.

***b. Appellant Wright's EED Claim: Reasons or Bases:*** In the *Wright* case, the Board correctly pointed out the requirements of *Karnas* and section 5110(g) in terms of adjudicating the appellant's claim under the appropriate DC. However, the Board abruptly and incorrectly concluded its analysis there: "Accordingly, the Board should apply the amended regulation to rate the veteran's disability ***for periods from and after the effective date of the amendment***." *Wri*. R. at 5 (citing G.C. Prec. 03-00). Under *DeSousa*, as well as G.C. Prec 03-00, which was cited by the Board, this analysis is incomplete; G.C. Prec. 03-00 plainly holds that in a circumstance such as this, "the Board should apply the amended regulation to rate the veteran's disability for periods from and after the effective date of the amendment[, and t]he Board should apply ***the prior version of the regulation to rate the veteran's disability for any period preceding the effective date of the amendment***". G.C. Prec. 03-00; *see DeSousa*, *supra.* The Board was bound to follow G.C. 03-00, *see* 38 U.S.C. § 7104(c); *Herlehy v. Principi*, 15 Vet.App. 33, 34 (2001) (per curiam order); instead, however, the Board simply inserted the following summary conclusion in the final paragraph of the part of its decision entitled "Hearing Loss" (pertaining to the appellant's claim for an increased rating for bilateral hearing loss): "However, the preponderance of the evidence is against the claim for a compensable evaluation for tinnitus under the prior rating criteria in effect during the pendency of this appeal prior to June 10, 1999." *Wri*. R. at 6, 9. Because the Board failed (1) to discuss the pre-1999 DC 6260, a "potentially applicable" regulation (which the Court holds ***is applicable*** under *DeSousa*), *Schafrath*, *supra* (construing 38 U.S.C. § 7104(a)), (2) to provide an explanation for its decision that would enable an appellant to understand the precise basis for the Board's decision, s*ee* 38 U.S.C. § 7104(d)(1); *Allday* and *Gilbert*, both *supra*; and (3) to account for the evidence that it finds persuasive or unpersuasive, *see Caluza* and *Gabrielson*, both *supra*, the Court holds that the Board's statement of reasons or bases was inadequate. On remand, the Board must adjudicate fully the appellant's claim in compliance with these requirements. Of course, in readjudicating appellant Wright's claim, the Board is also bound by this opinion's holding in part III.B.2.c, below, that the trauma requirement in pre-1999 DC 6260 is invalid.

Moreover, as to the appellant's argument regarding the Board's "de[] facto" holding that his tinnitus is only "recurrent" but not "persistent" (*Wri*. Br. at 6, 12-13), the Board does make two references to the appellant's tinnitus as being "recurrent" (*Wri*. R. at 2, 5), but both of these

references appear to pertain to the evaluation of the appellant's tinnitus under revised ***DC 6260 (1999)***, in which "recurrent" is the criterion of frequency. As stated above, the Board did not actually evaluate the appellant's condition under pre-1999 DC 6260, and, furthermore, the Board decision does not appear to contain any discussion or application of the "persistent" criterion in pre-1999 DC 6260 in terms of the appellant's claim. *See Wri*. R. at 1-10. Therefore, on remand, the Board must adjudicate this issue (1) in light of the Secretary's concession that "'tinnitus described as ["]constant["] is ["]persistent["] within the meaning of the regulation'" (Br. #2 at 9-10 (quoting language from *Wri*. Br. at 12-13 and stating, "[t]he Secretary does not dispute that statement"); and (2) taking into account the record on appeal (ROA); and (3) providing an adequate statement of reasons or bases for its decision. *See* 38 U.S.C. § 7104(a), (d)(1); *Wri.* R. at 32-33, 77, 79, 87, 90, 95.

The Court notes that the first mention of the appellant's tinnitus is found in the July 1985 RO decision, where it granted "[service connection] for tinnitus" but found that the requirements for a compensable rating were not met. *Wri*. R. at 18. In the summary section listing the service-connected disabilities in that decision, however, the RO did not separate out the appellant's tinnitus as a separate noncompensable rating; instead, the RO listed the condition as "defective hearing, bilateral with tinnitus" and listed the 0% rating effective from December 21, 1945. *Wri*. R. at 19. Therefore, although the RO determined that a separate noncompensable rating was appropriate, the effective date of that rating is not clear from the record. *See Wri*. R. at 18-19. On the remand ordered herein, the Board should consider this matter in determining whether the appellant meets the criteria under DC 6260 (1998) for the period prior to June 10, 1999.

*c. Appellant Wanner's EED Claim: Validity of Trauma Requirement:* As stated in part III.B.1., above, the Court may "hold unlawful and set aside" regulations that are, inter alia, "not in accordance with law" or "in excess of statutory . . . authority[] or limitations, or in violation of a statutory right". 38 U.S.C. § 7261(a)(3)(A), (C). Appellant Wanner argues that the Court should invalidate that portion of pre-1999 DC 6260 that imposes a trauma requirement for service connection for tinnitus, because it violates section 1110, which states:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active

17

military, naval, or air service, during a period of war, ***the United States will pay to any veteran thus disabled*** and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, ***compensation as provided in this subchapter***, but no compensation shall be paid if the disability is a result of the person's own willful misconduct or abuse of alcohol or drugs.

38 U.S.C. § 1110 (emphasis added). Because section 1110 states that the "United States ***will pay*** [disability compensation] ***to any*** veteran thus disabled" and the Secretary has promulgated a regulation that allows payment to only ***some*** of the veterans "so disabled", as described in section 1110, that regulatory provision is inconsistent with the plain meaning of section 1110 and thus is "in violation of a statutory right", 38 U.S.C. § 7261(a)(3)(C), and "not in accordance with law", 38 U.S.C. § 7261(a)(3)(A).

Section 7261(a) also directs the Court to "hold unlawful and set aside decisions" that are, inter alia, "arbitrary, capricious, [or] an abuse of discretion". 38 U.S.C. § 7261(a)(3)(A). The Court notes that the parties have provided no record, including regulatory history, with respect to DC 6260 that explains why there was originally a trauma requirement or why in 1999 that requirement was removed. Because the Court can find no basis for that distinction, the only conclusion available is that it constitutes "arbitrary and capricious" rulemaking to exclude certain veterans from receiving compensation based on the way in which they incurred their service-connected disabilities. *See Gilbert*, 1 Vet.App. at 58 (citing *Motor Vehicles Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983), for proposition that decision denying benefits would not be subject to reversal under the "arbitrary, capricious, [or] an abuse of discretion" standard when decision is "premised upon a rational basis and supported by appropriate and relevant favors which were properly articulated"). Accordingly, the trauma requirement contained in DC 6260 (1998) is invalid on this basis as well. The Court notes that it is aware of no other VA regulatory provision in which the Secretary has attempted to exclude certain veterans in a similar manner.

In view of the foregoing analysis, the Court will invalidate that part of the pre-1999 regulation that contained a trauma requirement; as a result, the sole criterion remaining in that regulation will be "[p]ersistent". 38 C.F.R. § 4.87a, DC 6260 (1998).

18

Appellant Wanner received his original grant of service connection for tinnitus in August 1985. *Wan.* R. 117. In September 1985, he was awarded a 0% rating for that condition, effective April 15, 1982. *Wan.* R. 122. At that time, DC 6260 contained the trauma requirement and the same language as it did in the pre-1999 version. 38 C.F.R. §§ 4.84b, DC 6260 (1982); 4.87a, DC 6260 (1998). Because the Court now holds that the trauma requirement is invalid, the Court will vacate the BVA decision and remand the matter for the Board to readjudicate the EED issue under the sole criterion remaining under prior law, "persistent".

## IV. Conclusion

Upon consideration of the ROA, the parties' pleadings, oral argument, and the foregoing analysis, the Court vacates the Board's February 2001 *Wright* decision and June 2000 *Wanner* decision and remands the matters for expeditious readjudication consistent with this opinion. Upon readjudication, the Board must provide expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5103(a), 5103A, 7104(a), (d); 38 C.F.R. §§ 4.25(b), 4.87, DC 6260 (2002); 38 C.F.R. § 4.87a, DC 6260 (1998); 38 C.F.R. § 4.25(b); *DeSousa*, *supra*; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) – all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday*, 7 Vet.App. at 533-34. Furthermore, the Court grants the Secretary's motion to withdraw that portion of his *Wanner* brief regarding exhaustion of remedies. Br. #1 at 5-9. The Court also invalidates 38 C.F.R. § 4.87a, DC 6260 (1998) to the extent that it is inconsistent with 38 U.S.C. § 1110 as herein interpreted. On remand, the appellants will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence), and such evidence and argument must be considered on remand, *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court notes that a remand by this Court and by the Board confers

on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new final Board decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.