# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-3721

LUIS A. MARTINEZ-BODON, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 7, 2020                                        Decided August 11, 2020)

*Christian A. McTarnaghan*, with whom *Tessa S. Stillings* was on the brief, both of Providence, Rhode Island, for the appellant.

*Lori M. Jemison*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Carolyn F. Washington*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

ALLEN, *Judge*: Appellant Luis A. Martinez-Bodon served the Nation honorably in the United States Army from August 1967 to March 1969.[1] In this appeal, which is timely and over which, except to the extent we discuss below, the Court has jurisdiction,[2] he challenges a June 29, 2018, decision of the Board of Veterans' Appeals that denied service connection for an anxiety disorder.[3] This matter was submitted to a panel of the Court to address whether, pursuant to the Federal Circuit's decision in *Saunders v. Wilkie*,[4] a claimant may establish service connection for a psychiatric disability based on symptoms and functional impairment but without a diagnosis that conforms to the *Diagnostic and Statistical Manual of Mental Disorders*, *Fifth Edition* (DSM-5).

---

[1] Record (R.) at 474.

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[3] The Board also denied service connection for right ear hearing loss and a compensable disability rating for left ear hearing loss. Appellant raises no argument as to these claims on appeal, and we deem any appeal as to them abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

[4] 886 F.3d 1356 (Fed. Cir. 2018).

For the reasons discussed below, we hold that although in *Saunders* the Federal Circuit did not limit the definition of "disability" to pain, with respect to psychiatric disabilities VA has expressly limited compensation to disabilities conforming to a DSM diagnosis. We also hold that this Court lacks jurisdiction to review the Secretary's decision to require such a diagnosis as set out in the schedule of ratings. Therefore, we will affirm the Board's decision.

## I. FACTS AND PROCEDURAL HISTORY

In April 2016, appellant filed claims seeking service connection for diabetes mellitus and for a mental condition that he claimed was secondary to diabetes mellitus.[5] He underwent a VA examination for his psychiatric condition in September 2016, and the examiner noted appellant's reports of not sleeping well and feeling anxious about a trembling in his right eye.[6] The examiner also noted that appellant "denies other symptoms on direct inquiry."[7] The examiner concluded that "[s]ince there are no criteria for a mental condition per DSM-5," she could not answer whether appellant's mental condition was due to his diabetes mellitus.[8]

In a September 2016 rating decision, the regional office (RO) granted service connection for diabetes mellitus, assigning a 20% disability rating, and denied service connection for an anxiety disorder.[9] Appellant filed a Notice of Disagreement with the denial of service connection for an anxiety disorder in October 2016.[10] He did not express disagreement with the rating assigned for diabetes mellitus.[11] The RO issued a Statement of the Case in April 2017,[12] and appellant perfected his appeal that same month.

In the June 2018 decision on appeal, the Board denied service connection for an anxiety disorder, finding that appellant did not have a current diagnosed disability.[13] The Board relied on the September 2016 VA examiner's finding that appellant did not meet DSM criteria for a mental

---

[5] R. at 480-81.

[6] R. at 441.

[7] *Id.*

[8] R. at 444.

[9] R. at 385-88.

[10] R. at 357-58.

[11] *Id.*

[12] R. at 289-331.

[13] R. at 6.

condition.[14] The Board also found "no additional medical evidence, including in [appellant's] VA treatment records, in significant conflict with the results" of the VA examination.[15] Although the Board found appellant was "competent to report symptoms observable to a layperson," it found that he was not competent to provide a diagnosis.[16] Thus, the "preponderance of the evidence" was against a finding of a mental health disorder, and the Board denied service connection.[17] This appeal followed.

## II. PARTIES' ARGUMENTS

Appellant raises two arguments on appeal.[18] First, he argues that the Board erred in requiring a diagnosis of a psychiatric disability in order to establish service connection. He asserts such a requirement is inconsistent with *Saunders*. Specifically, he contends that the holding in *Saunders* extends to more than just pain and "encompasses any undiagnosed disability that results in functional loss."[19] Thus, he asserts that as long as his anxiety and sleep impairment "caused impairment of earning capacity," they constitute a disability for service-connection purposes.[20] He maintains that the Board erred in failing to consider whether his diabetes mellitus caused or aggravated his anxiety and sleep impairment and in relying on the VA examiner's opinion that did not reach those questions.

Alternatively, appellant argues that the Board erred in failing to consider whether he was entitled to separate disability ratings for his anxiety and sleep impairment symptoms, both of which he posits are caused by his service-connected diabetes mellitus. He contends that his 20% disability rating for diabetes mellitus does not account for these symptoms, which the Board conceded he was competent to report. Thus, the Board was required to consider separate ratings, which the evidence reasonably raised.

---

[14] R. at 7.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] In his briefs appellant raised a third argument regarding the Board's failure to consider whether his anxiety was a result of his diabetes medication. But he withdrew this argument in a June 30, 2020, filing so we will not address it further.

[19] Appellant's Brief (Br.) at 13.

[20] Appellant's Br. at 12-13.

The Secretary argues that *Saunders* is limited to pain and that the Federal Circuit "did not consider other types of symptomatology."[21] Even assuming that *Saunders* extends beyond pain, the Secretary points to 38 C.F.R. §§ 4.125 and 4.130 and contends that these provisions require psychiatric disabilities to conform to DSM-5 to be compensated. Thus, he asserts that without a DSM-5 diagnosis, the Board did not err in finding the criteria for service connection not met and the VA examination adequate. Furthermore, the Secretary argues that the Court only has jurisdiction to address service connection for anxiety, because the disability rating for diabetes mellitus was not before the Board.

## III. ANALYSIS

### A. *Legal Framework*

Establishing service connection generally requires evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the claimed in-service disease or injury and the present disability.[22] Additionally, secondary service connection is appropriate when either a service-connected disability causes another disability, or a service-connected disability proximately causes the worsening of a preexisting disability.[23]

The Court reviews the Board's findings regarding service connection for clear error.[24] We may overturn the Board's factual findings only if there is no plausible basis in the record for the Board's decision and the Court is "'left with the definite and firm conviction'" that the Board's decision was in error.[25] In contrast, we review questions of law de novo.[26] And for all its findings on a material issue of fact and law, the Board must support its decision with an adequate statement

---

[21] Secretary's Br. at 10. At oral argument, the Secretary's counsel changed VA's position by conceding that *Saunders* may apply to conditions beyond pain. Yet the Secretary continued to maintain that the Federal Circuit's decision did not extend to mental conditions. Oral Argument (O.A.) at 39:00-40.21, *Martinez-Bodon v. Wilkie*, U.S. Vet. App. No. 18-5980 (oral argument held July 7, 2020), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

[22] 38 C.F.R. § 3.303(a) (2020); *see Hickson v. West*, 12 Vet.App. 247, 252 (1999).

[23] 38 C.F.R. § 3.310(a) (2020).

[24] 38 U.S.C. § 7261(a)(4); *Dyment v. West*, 13 Vet.App. 141, 144 (1999), *aff'd*, 287 F.3d 1377 (Fed. Cir. 2002).

[25] *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[26] *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

of reasons or bases that enables a claimant to understand the precise bases for the Board's decision and facilitates review in this Court.[27]

Appellant does not challenge the Board's conclusion that he lacks a diagnosed mental condition. So, the resolution of this appeal turns on whether service connection for a mental condition may be awarded in the absence of a diagnosis conforming to the DSM-5. To answer that question, we begin by considering the Federal Circuit's decision in *Saunders*.

### B. The Scope of Saunders v. Wilkie

In *Saunders*, the Federal Circuit held that pain alone, without a specific diagnosis or otherwise identified disease or injury, may constitute a disability under 38 U.S.C. § 1110 to establish service connection.[28] Section 1110 is the statutory authority for basic entitlement to VA compensation and provides such compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty."[29] The Federal Circuit noted that section 1110 does not define "disability."[30] In the absence of an express definition, the Federal Circuit turned to the ordinary meaning of the statutory term "disability" and the overall structure of VA's rating schedule.[31] Employing this interpretive strategy, the court defined "disability" as "functional impairment of earning capacity."[32] Applying this definition to the facts before it, the Federal Circuit held that "pain is an impairment because it diminishes the body's ability to function and that pain need not be diagnosed as connected to a current underlying condition to function as an impairment."[33] Again looking to VA's rating schedule, the court noted that various rating regulations "treat pain as a form of functional impairment" and that "these regulations indicated how VA interprets the role of pain in assessing disability, and thus they are relevant to the question of whether pain can be a disability."[34] The Federal Circuit summarized its decision in *Saunders*:

> We do not hold that a veteran could demonstrate service connection simply by asserting subjective pain—to establish a disability, the veteran's pain must amount

---

[27] 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57.

[28] 886 F.3d at 1358.

[29] 38 U.S.C. § 1110.

[30] 886 F.3d at 1363.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 1364.

[34] *Id.*

to a functional impairment. To establish the presence of a disability, a veteran will need to show that her pain reaches the level of a functional impairment of earning capacity.[35]

In *Saunders* the Federal Circuit only considered pain. That is entirely understandable given the facts before the court. The question for us is whether *Saunders* is limited to pain or whether its analysis extends to include other manifestations of a condition without a diagnosis. We believe the answer to this question is dictated by how the Federal Circuit reached its decision in *Saunders*. As we explained above, the court based its holding on an interpretation of the word "disability" in section 1110.[36] The court gave no indication that it was defining that term differently for pain than it would have for any other condition, and we can think of no reason why the definition of the statutory term "disability" would vary depending on the condition at issue. Thus, we hold that *Saunders* is not limited to pain. The definition of "disability" in section 1110 includes any condition that results in "functional impairment of earning capacity" because that is what the Federal Circuit held the statutory term means. In short, this definition applies in any case that implicates section 1110, not just those involving pain, including the psychiatric condition at issue here.

But this is not the end of our inquiry; there is more to the story. In *Saunders*, the Federal Circuit acknowledged VA's authority to create the schedule for rating disabilities.[37] The Federal Circuit then looked to VA regulations to determine whether the Agency had spoken about pain as functional impairment in earning capacity.[38] Although the issue of service connection is an "upstream issue" that is distinct from "the logically downstream element of compensation level," implicit (or perhaps explicit) in *Saunders* is the principle that the rating schedule provides important indications about how VA interprets the role of certain types of impairments in assessing disability and thus informs whether those impairments can be compensated as a disability. In this regard, the Federal Circuit relied on 38 C.F.R. § 4.10, which provides that the "basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the

---

[35] *Id.* at 1367-68. This appeal does not require us to consider how one establishes that a condition causes "a functional impairment in earning capacity." So, we express no view on that matter.

[36] *Id.* at 1363.

[37] 38 U.S.C. § 1155.

[38] 886 F.3d at 1362.

body to function under ordinary conditions of daily life including employment."[39] The court also found several instances in which VA had based disability ratings on the presence of pain as a form of functional impairment.[40]

We now turn to VA's rating schedule to determine whether the Secretary has spoken about psychiatric symptoms as functional impairment of earning capacity. In discussing disability ratings, the language of 38 C.F.R. § 4.10 includes "the psyche," which indicates that, like pain, psychiatric symptoms can be considered functional impairment as far as the rating schedule is concerned. However, VA's rating schedule includes other regulations, specifically §§ 4.125 and 4.130, that speak to psychiatric disabilities specifically and how they are to be evaluated. It is here that VA's treatment of psychiatric symptoms differs from its treatment of pain. We turn to these regulations next.

*C. Interpreting 38 C.F.R. §§ 4.125 and 4.130*

VA's rating schedule contains two provisions that are critical to our analysis. First, 38 C.F.R. § 4.125(a), entitled "Diagnosis of mental disorders," provides that "[i]f the diagnosis of a mental disorder does not conform to DSM-5 or is not supported by the findings on the examination report, the rating agency shall return the report to the examiner to substantiate the diagnosis."[41] Second, 38 C.F.R. § 4.130 provides the actual schedule of ratings for mental disorders. That section begins by setting forth general principles, specifically that "[t]he nomenclature employed in this portion of the rating schedule is based upon the [DSM-5]" and "[r]ating agencies must be thoroughly familiar with this manual to properly implement the directives . . . and to apply the general rating formula."[42] And when it comes to the assignment of a specific rating we see that at the 0% disability rating, § 4.130 provides that a "mental condition has been formally diagnosed, but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication."[43] Our task is to determine what these two regulatory provisions mean in terms of how the *Saunders* rule applies in the context of a mental condition without a diagnosis.

---

[39] 38 C.F.R. § 4.10 (2020); *see Saunders*, 886 F.3d at 1364.

[40] *Saunders*, 886 F.3d at 1364 (citing 38 C.F.R. §§ 4.40, 4.45, and 4.65 (2017)).

[41] 38 C.F.R. § 4.125 (2020).

[42] 38 C.F.R. § 4.130 (2020).

[43] *Id.*

Before turning to this endeavor, we must take our first jurisdictional detour – another more extensive one comes later. Congress has precluded this Court from "re-view[ing] the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising that schedule,"[44] a limit on our review that we will discuss further below. But this jurisdictional limitation does not prevent us from determining what 38 C.F.R. §§ 4.125 and 4.130 *mean*. We unquestionably have jurisdiction over cases involving "an interpretation of the language in the regulations" related to the schedule.[45] And it is to this task we return now.

The Court reviews the interpretation of regulations, including diagnostic codes (DCs), de novo because this interpretation is a purely legal question.[46] To determine the meaning of a DC, we look first to "the language of the regulation, the plain meaning of which is derived from its text and its structure."[47] If the plain meaning of the regulation is clear from its language, then the plain meaning controls, and "that is 'the end of the matter.'"[48] When we assess the meaning of a regulation, we should not read its words in isolation but rather in the context of the regulatory scheme and structure as a whole.[49]

We begin our analysis with § 4.130, which provides important context. In the introduction to the rating criteria for all mental disorders, VA first explains that the nomenclature used in the rating criteria is derived from the DSM-5. The Agency then goes on to emphasize the importance of the DSM-5 by requiring that "[r]ating agencies" be "thoroughly familiar" with the DSM-5 so that the preceding regulations that refer to it can be properly implemented.[50] This emphasis on the DSM-5 in terms of both categorizing the mental disorders to be rated and implementing the rating criteria is particularly significant as we explain more below. For now, it suffices to note that the entire rating regime for mental disorders is predicated on the diagnostic criteria set forth in the

---

[44] 38 U.S.C. § 7252(b).

[45] *Smith v. Nicholson*, 451 F.3d 1344, 1346-47 (Fed. Cir. 2006); *see also Wingard v. McDonald*, 779 F.3d 1354, 1357 (Fed. Cir. 2015).

[46] *Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020).

[47] *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993); *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[48] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994); *see also Kisor v. Wilkie*, __ U.S. __, __, 139 S. Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019).

[49] *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

[50] 38 C.F.R. § 4.130.

DSM-5, which alone supports an interpretation of the regulatory regime as requiring a DSM-5 diagnosis.

This reading is further supported when we consider the specific rating criteria provided for mental disorders set out in § 4.130. At the 0% disability level, VA expressly requires that "a mental condition has been formally diagnosed."[51] Although the regulation does not repeat that diagnostic requirement at each of the higher disability levels, we interpret each higher level to include such requirement. The rating criteria in § 4.130 are based on severity; each higher level is characterized, relative to the next lower level, by worsening occupational and social impairment from a mental condition. This upwardly cascading nature of the rating criteria, when read in the context of the introductory paragraph's emphasis on the DSM-5, plainly supports that § 4.130 requires a DSM-5 diagnosis in order to rate mental conditions at every rating level.

To read § 4.130 as requiring a diagnosis for a 0% rating but not for higher ratings would also lead to absurd results, something courts should avoid in statutory and regulatory interpretation.[52] Such an interpretation, for example, would mean that a veteran would have to meet a more stringent requirement – a DSM-5 diagnosis – for a noncompensable rating than he or she would for a 30, 50, or 100% rating. That makes no sense at all. Additionally, limiting the DSM-5's diagnostic criteria to a 0% rating under § 4.130 would render the introductory paragraph's emphasis on the DSM-5's importance out of place or perhaps even superfluous, which the Court must also avoid.[53] If the diagnosis requirement applied only at the 0% rating level, then there would be no reason for VA to emphasize the importance of the DSM-5 before laying out the psychiatric disabilities it intended to compensate and the criteria by which those disabilities would be rated. After all, this reading would say the DSM-5 was critical when awarding a disability rating that would entitle a veteran to no monetary compensation but not important to one that provided significant compensation. Again, such a reading makes no sense.

And this leads us to § 4.125, the second significant regulatory provision in terms of resolving this appeal. When we consider the language of this regulation, we see more clearly the Secretary's intent to require a DSM-5 diagnosis as a precondition to compensate mental conditions.

---

[51] *Id.*

[52] *See, e.g.*, *McNeill v. United States*, 563 U.S. 816, 822 (2011); *United States v. Wilson*, 503 U.S. 329, 334 (1992); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998).

[53] *See Jensen v. Shulkin*, 29 Vet.App. 66, 74 (2017) (citing *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006)).

To be sure, the Secretary could have been more explicit about the diagnosis question. In that regard, the language of § 4.125(a) can be read two ways. First, it could mean, as the Secretary argues, that a diagnosis consistent with the DSM-5 is *required* for a mental condition to be compensated. On the other hand, as appellant asserts, it could be read to mean that *if* a claimant has a psychiatric diagnosis, that diagnosis must comply with the DSM-5. Thus, § 4.125's meaning is not plain based on the words of the regulation standing alone.

However, when taken in context with § 4.130, the first reading – that a diagnosis is required for all mental conditions – is the more reasonable interpretation.[54] Regulations that immediately precede diagnostic codes "explain how to arrive at proper evaluations under the DCs appearing in that portion of the rating schedule."[55] Therefore, when rating a mental condition, an adjudicator must consider § 4.125(a)'s direction that a diagnosis comply with the DSM-5. If psychiatric symptoms without a DSM-5 diagnosis could be rated, then § 4.125(a) would be eliminated from consideration at all compensable rating levels under § 4.130 and would only apply at the noncompensable disability level. Such a reading is simply not reasonable.

Additionally, the fact that both § 4.125(a) and the introductory paragraph set forth in § 4.130 explicitly point adjudicators to the DSM-5 reinforces the conclusion that a DSM-5 diagnosis is required. It is not logical that the Secretary would emphasize the importance of the DSM-5 in two regulations, both of which could be ignored if a claimant has symptoms sufficient to meet the rating criteria without reference to the DSM's diagnostic criteria.

In sum, we hold that the plain language of § 4.130 requires a DSM-5 diagnosis to compensate a psychiatric disability and that the most reasonable interpretation of § 4.125(a), when read in conjunction with § 4.130, requires the same. Having provided an interpretation for these regulations, we further hold that the *Saunders* definition of a "disability" is constrained as relevant to this appeal by VA's decision to limit the psychiatric disabilities it would compensate.

This leads us to our second jurisdictional detour. Appellant would have us consider whether VA's limitation on mental conditions that are diagnosed is consistent with section 1110 as the Federal Circuit defined "disability" in *Saunders*. However, as we discuss next, Congress has made clear that we cannot reach that question.

---

[54] *Id.*

[55] *Southall-Norman v. McDonald*, 28 Vet.App. 346, 351 (2016) (internal quotation marks and alteration omitted).

*D. Court's Jurisdictional Limitations*

Appellant argues that to the extent VA's regulations require a diagnosis of a mental condition, those regulations conflict with section 1110's definition of "disability," as explained in *Saunders*. As noted above, this Court "may not review the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising the schedule."[56] Both this Court and the Federal Circuit have read this prohibition to preclude jurisdiction to review rating schedule regulations for consistency with section 1110.

In *Wanner v. Principi*,[57] the Federal Circuit held that this Court lacked jurisdiction to review whether 38 C.F.R. § 4.87a, DC 6260, which provided a single rating for bilateral tinnitus as opposed to a rating for each ear, was inconsistent with section 1110. Citing sections 502 and 7252(b), the Federal Circuit held that "[t]he statutory scheme thus consistently excludes from judicial review all content of the ratings schedule as well as the Secretary's actions in adopting or revising that content."[58] The court also noted that review of the legislative history demonstrated Congress's intent to "broadly preclud[e] judicial review of the contents of the disability rating schedule in toto."[59] The Federal Circuit found section 7252(b) to "remove[] from the Veterans Court's jurisdiction *all* review involving the content of the rating schedules and the Secretary's actions in adopting or revising them."[60] The Federal Circuit held the only exception, for constitutional challenges, was a narrow one.[61] The court further held that our review of the tinnitus regulation "amount[ed] to a direct review of the content of the rating schedule and [was] indistinguishable from the review of 'what should be considered a disability.'"[62]

The *Wanner* court was unequivocal in precluding our Court from reviewing provisions of the rating schedule, going so far as to equate review of the content of the rating schedule with review of what should be considered a disability. The broad jurisdictional preclusion leaves little room for Court intervention in the rating schedule. In fact, the Federal Circuit confined that space

---

[56] 38 U.S.C. § 7252(b).

[57] 370 F.3d 1124 (2004).

[58] *Id.* at 1129.

[59] *Id.* at 1130.

[60] *Id.* (emphasis in original).

[61] *Id.*

[62] *Id.* at 1131 (quoting *Wanner v. Principi*, 17 Vet.App. 4, 14-15 (2003)).

to constitutional challenges, an exception which does not apply in the case before us. The Federal Circuit later provided a little more room for this Court's review of the rating schedule, adding two additional exceptions to the statutory preclusion: A procedural challenge to the Secretary's adoption of schedule regulations and, as we discussed above, interpretation of language in the regulations.[63] The *Wingard* Court also held that there was "no dispute that Department regulations defining the schedule's content are part of " the rating schedule and thus precluded from review.[64]

This Court has strictly applied *Wanner* in finding that it lacked jurisdiction to consider whether the Secretary's decisions in defining what disabilities to compensate are consistent with section 1110. In *Byrd v. Nicholson*, the veteran challenged 38 C.F.R. § 3.381(a), which precludes compensation for periodontal disease.[65] The Court found that his challenge actually involved VA's rating schedule, specifically "the content of 38 C.F.R. § 4.150, which does not list periodontal disease as a disability" and contains a note that periodontal disease is not considered disabling.[66] Thus, "[t]he appellant's challenge would require the Court to review the content of the rating-schedule regulation, which review the Court cannot undertake."[67] Citing *Wanner* and section 7252(b), the Court held it lacked jurisdiction and affirmed the Board's decision denying service connection for a periodontal disease.[68]

More recently, in *Marcelino v. Shulkin*, this Court addressed its jurisdiction to review a challenge to the Secretary's determination that obesity is not a disability for VA compensation purposes.[69] The Court held that the Federal Circuit's jurisdictional decisions and section 7252 "are unequivocal in their language that this Court is precluded from reviewing the content of the rating schedule" and that the *Wanner* court held that "reviewing what should be considered a disability is no different from direct review of the content of the rating schedule."[70] The Court held that Mr. Marcelino

---

[63] *Wingard*, 779 F.3d at 1357.

[64] *Id.*

[65] 19 Vet.App. 388 (2005).

[66] *Id.* at 392.

[67] *Id.*

[68] *Id.* at 394.

[69] 29 Vet.App. 156 (2018).

[70] *Id.* at 158.

asks the Court to direct VA to interpret the term "disease" to include obesity. As there is currently no provision in the rating schedule to compensate for obesity, a ruling by this Court finding that VA should include obesity as a compensable disease *or* a finding that the Board erred when it denied Mr. Marcelino service connection for obesity would require the Court to undertake the very review of the rating schedule that has been barred from its jurisdiction.[71]

Thus, we have considered §§ 4.125 and 4.130 as far as allowable under our binding precedent. We were able to provide an interpretation of those regulations, but this case does not involve either of the two other exceptions to our preclusion from reviewing the rating schedule, and our analysis must end there. This Court lacks jurisdiction to question what the Secretary decides constitutes a disability, including whether the Secretary's definition of certain disabilities complies with section 1110. The caselaw is quite clear on this point. In this opinion, we have held that the Secretary requires a DSM-5 diagnosis to compensate mental conditions. Having done so, we are without jurisdiction to review the propriety of that requirement in the absence of a constitutional challenge or a claim that the regulations were adopted in a procedurally defective manner, neither of which is mounted here.

At oral argument, appellant's counsel asserted that this case is distinguishable from *Wanner*, *Byrd*, and *Marcelino* because those cases asked the Court to add or delete language from the rating schedule regulations, which is prohibited by section 7252(b), whereas here, the rating schedule contains everything the Secretary needed to rate appellant's undiagnosed anxiety by analogy.[72] But we fail to see the distinction between this case and those where jurisdiction was precluded. Here, given our interpretation of §§ 4.125(a) and 4.130, appellant asks that we remove the diagnosis requirement that we find explicit in those regulations. Thus, under appellant's own summary of our binding caselaw, his argument must fail.

Succinctly stated, we lack jurisdiction to review the Secretary's regulations concerning mental conditions contained in the rating schedule to determine whether they are consistent with section 1110. We have interpreted those regulations to require a DSM-5 diagnosis for

---

[71] *Id.*

[72] O.A. at 23:20-25:53, http://www.uscourts.cavc.gov/oral_arguments_audio.php. We also question the premise that one may rate appellant's undiagnosed anxiety by analogy using the criteria set out in § 4.130, because that anxiety is specifically listed in the rating schedule in Diagnostic Code 9400. *See Copeland v. McDonald*, 27 Vet.App. 333, 336-37 (2015).

compensation, but our analysis must end there. Thus, we cannot conclude that the Board erred in denying service connection for an anxiety disorder because it found no current disability.

### E. Separate Ratings for Sleep Impairment and Anxiety

Having established that a DSM-5 diagnosis is required to establish a current psychiatric disability, we turn to appellant's other argument. He contends that because he asserted before VA that his psychiatric symptoms of sleep impairment and anxiety are secondary to his service-connected diabetes mellitus, he should be awarded separate disability ratings for those symptoms, as they are not contemplated by his diabetes mellitus rating. This argument also must fail. As discussed above, VA's rating schedule requires a DSM-5 diagnosis as a precondition for compensating veterans for psychiatric disabilities, and the evidence does not support such a diagnosis.

### F. Summary

We hold that the Federal Circuit's decision in *Saunders*, which defined a "disability" as a functional impairment of earning capacity, applies broadly to include more than just pain. However, this definition is limited by VA's authority to adopt and apply its rating schedule. With respect to mental conditions, we hold that VA has used its authority to limit compensation to disabilities that conform to a DSM-5 diagnosis. Although we have reviewed those regulations, specifically §§ 4.125 and 4.130, to interpret their meaning, our review stops there, as we lack jurisdiction to determine whether the regulations are consistent with section 1110. Thus, we conclude that the Board did not err in denying service connection for an anxiety disorder based on its finding of no current disability. So, we will affirm the Board's decision.

## IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court AFFIRMS the June 29, 2018, Board decision.